IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

FILED

2002 OCT 18 P 3: 33

U.S. BANKRUPTCY COURT
W. WINSTON-SALEM, N.C.
ORIGINAL OFFICE

IN RE:                          )
                                )
E-Z SERVE CONVENIENCE           )        Case No. 02-83134 C-11
STORES, INC., et al.,           )        to Case No. 02-83138
                                )
        Debtor.                 )
                                )

**MOTION OF HARTRAMPF OUTDOOR, LLLP TO COMPEL DEBTOR TO COMPLY
WITH 11 U.S.C. § 365(d)(3) AND FOR ADMINISTRATIVE CLAIM**

COMES NOW Hartrampf Outdoor, LLLP ("Movant") and pursuant to the

provisions of 11 U.S.C. §§ 365(d)(3) and 503(b)(1) moves this Court for an order

compelling the Debtor to pay post petition rent and other charges due under the Lease for

non-residential real property dated December 7, 1992, between Movant and E-Z Serve

Convenience Stores, Inc ("Debtor"), a copy of which is attached hereto as Exhibit "A"

and incorporated by reference herein as if set forth in full, and to perform all of its other

obligations thereunder and granting Movant an administrative claim for all rentals and

other amounts due to it by the Debtor post petition arising from the Lease. In support of

its motion, Movant shows this Court as follows:

1.      The Debtor commenced a petition under Chapter 11 of Title 11 of the U.S.

Code in this Court on October 4, 2002.

2.      Movant is the owner of real property located at 5585 South Chetatee Street,

Dahlonega, Lumpkin County, Georgia 30533 ("Leased Property").



1F

109

3.     On or about December 7, 1992, Movant's predecessors in interest, Carl R. Hartrampf, Sr. and Carl R. Hartrampf, and the Debtor's predecessor in interest, County Cupboard Foodstores, Inc., entered into a Ground Lease Agreement, as amended on December 18, 2000 (the "Lease") for the Leased Property. The lessor's interest in the Lease was first assigned on June 13, 2000 to John A. Hartrampf, Jr., Trustee of the Caroline Elizabeth Hartrampf Trust # 1 and as Trustee of the Leigh Anne Chamber Hartrampf Trust # 1 and subsequently assigned to Movant on April 1, 2001. Copies of the assignments are attached hereto collectively as Exhibit "B".

4.     The Lease provided for a minimum monthly rental rate effective January 1, 2001 through February 28, 2003 of $32,000 per calendar quarter, and increasing each year thereafter based on a CPI index. The Debtor failed to make the rental payment of $8,000 due on October 1, 2002 as required by paragraph 5 of the Lease.

5.     The provisions of Section 8 of the Lease require the Debtor to maintain public liability and property damage insurance at its cost to insure against claims for personal injury, death or property damages in limits of not less than $500,000 for injury or death of a single person, $1,000,000 for any one occurrence and $100,000 for property damage. The Debtor is also obligated to provide Movant with a certificate showing such insurance is then in force. The Lease further provides that all insurance proceeds will be payable to Movant and that it will have a lien on all such proceeds necessary to remove the destroyed improvements form the Leased Property in the event that the Debtor elected not to repair the damaged improvements.

2

6. Despite requests, Movant has not been provided with a current certificate showing the required insurance in place. The last certificate provided to Movant expired approximately one year ago and when Movant recently inquired of the Debtor's then insurance agent, it was told that the agent now longer did business with the Debtor.

7. Upon information and belief, the Debtor has discharged all but one of its employees and all of its locations, including the operation of the Leased Property, are presently closed and are not being maintained or secured. Indeed, Movant understands, based on conversations with counsel for GE Capital Franchise Finance Corp., that vandalism is occurring at the Debtor's locations and that it has had to undertake to secure some of the locations. The Movant visited this location on October 16, 2002 only to find that the Leased Property was not secured and that the doors were unlocked.

8. Paragraph 10 of the Lease requires the Debtor to maintain the Leased Property in good repair and presentable condition. Since the Debtor has shut down its operations and essentially abandoned the Leased Property, the Leased Property is not being maintained in accordance with this covenant.

9. In paragraph 14 of the Lease, the Debtor covenanted not to permit the Leased Premises to be encumbered by any liens. The Debtor has violated this covenant by permitting a lien from Hulsey Environmental to be filed against the Leased Property and it has not removed it.

10. In addition, because the Debtor operates a gas station on the Leased Property, paragraph 12 of the Lease requires the Debtor to comply with environmental conditions and further requires that the Debtor maintain all underground tanks in

compliance with the Georgia GUST Trust Fund. Movant has no knowledge that the Debtor is in compliance with its obligations under paragraph 12 of the Lease.

11. Paragraph 7 of the Lease requires the Debtor to pay all real property taxes as they become due. Those taxes will be due shortly and Movant does not expect that the Debtor will be able to comply with its obligations to pay 2002 property taxes which are a lien superior to the interest of Movant.

12. It is readily apparent, given the fact the Debtor has shut down all operations, that it is incapable of assuming the Lease in the manner required by 11 U.S.C. § 365(b)(1) and (3) that it does not have the financial ability to cure the defaults pursuant to the Lease and will not be able to propose a credible assignee of the Lease which satisfies the requirements of 11 U.S.C. § 365.

13. Since the commencement of this case, the Debtor has failed to pay post petition rent, and has otherwise failed to comply with the requirements of 11 U.S.C. § 365(d)(3) by not timely performing all of its obligations pursuant to the Lease.

14. By virtue of the foregoing, Movant is entitled to an order of this Court directing and compelling the Debtor to timely perform all of his obligations pursuant to the terms of the Lease as required by the provisions of 11 U.S.C. § 365(d)(3).

15. In the alternative, should the Debtor fail or refuse to comply with its obligations in accordance with 11 U.S.C. § 365(d)(3), then Movant is entitled to an administrative claim pursuant to 11 U.S.C. § 503(b)(1) for all post petition rent and other amounts due pursuant to the Lease which are not paid in accordance with its terms.

4

WHEREFORE, Movant respectfully moves this Court for an order pursuant to 11 U.S.C. § 365(d)(3):

1.     Compelling and ordering the Debtor to comply with all of its obligations pursuant to the Lease, including the timely payment of all post petition rent and interest from and after October 4, 2002, or,

2.     In the alternative, allowing Movant an administrative claim pursuant to 11 U.S.C. § 503(b)(1) in this case for all amounts that the Debtor fails to pay post petition in strict accordance with the terms of the Lease; and

3.     Granting Movant such other and further relief as the Court deems just and proper.

Respectfully submitted, this 18th day of October, 2002.

Thomas W. Waldrep, Jr.
N.C. State Bar No. 11135
Attorney for Hartrampf Outdoor, LLLP

OF COUNSEL:

BELL, DAVIS & PITT, PA
Century Plaza, Suite 600
100 North Cherry Street
Winston-Salem, North Carolina 27101
(336) 722-3700

John A. Christy
Georgia Bar No. 125518
J. Carole Thompson Hord
Georgia Bar No. 291473
SCHREEDER, WHEELER & FLINT, LLP
127 Peachtree Street, N.E.
1600 Candler Building
Atlanta, Georgia 30303
(404) 681-3450

## GROUND LEASE AGREEMENT

THIS AGREEMENT, made this 7th _(Hyw D.w.)_ day of **December**, 1992 by and between **Carl R. Hartrampf, Sr. & Carl R. Hartrampf, Jr.,** first party (hereinafter called "Lessor") and **Country Cupboard Foodstores, Inc.** second party (hereinafter called "Lessee") and Metro Brokers, Inc. third party (hereinafter called "Broker"). The terms "Lessor" , "Lessee" and "Broker" to include their successors and assigns wherever the context so requires or permits.

### WITNESSETH:

1.

EFFECTIVE DATE:

This Lease shall become effective on the 7th _(Hyw)_ D.w. day of December , 1992, such date hereinafter being referred to as the "effective date".

2.

DESCRIPTION OF PROPERTY:

In consideration of the mutual covenants contained herein, Lessor hereby leases to the Lessee, and the Lessee hereby leases from the Lessor the following described property located in the County of Lumpkin and State of Georgia as follows:

Property described on the attached Exhibit "A" and depicted on Exhibit "B" together with all rights, easements, reservations, rights-of-way, improvements, advantages and appurtenances belonging or appertaining thereto, hereinafter the "premises".

3.

TERM:

(a) Original: The Lessee, its successors and assigns are to have and to hold the premises for an original term of Twenty (20) years. The original term shall commence to run no later than Ninety (90) days after the effective date of this Lease, except as provided for in Paragraphs 4 (b) of this Lease, whichever date comes earlier. The date the original term commences shall be called the "Commencement Date." The parties agree upon demand of the other to execute a written Memorandum in recordable form expressing the commencement and termination dates of the term hereof, when such exact dates have been determined.

(b) Extensions: Provided that the Lessee is not in default of its obligations under this Lease, Lessee shall have the option of extending the terms hereof for one additional period of Ten (10) years, commencing at midnight on the date on which the original term or any extended term of this Lease terminates.

1

# EXHIBIT A

The lease extension shall be automatic so that unless the Lessee shall give to the Lessor notice that it does not intend to renew this Lease, which notice must be given not later than one hundred twenty (120) days prior to the expiration of the current term or extended term, as the case may be, the parties shall be bound to the agreements of this Lease for such additional term of years as set forth.

4.

## CONSTRUCTION PERMITS-TERMINATION:

(a)   After the effective date hereof, Lessee shall immediately apply to the appropriate governmental authorities for such licenses, zoning, variances, permits and any other administrative approvals (herein collectively called "Permits") as may be necessary to construct and operate a convenience store only for the sale, at retail, of motor fuel and convenience food items together with Lessee's identification sign pole.

(b)   This Lease shall automatically expire ninety (90) days following the effective date hereof unless no less than ten (10) days prior thereto Lessee shall notify Lessor that all permits have been obtained.  In the event the Lessee shall not have obtained all of its necessary permits before the expiration date the Lessee will have the right, at its option, to extend for one successive ninety (30) day period ("extension period") upon payment of Ten Thousand and no/100 Dollars ($10,000.00) to Lessor.  If, at the expiration of the extension period or at any time during same, Lessee shall not have obtained all necessary permits, Lessee shall have the right to terminate this Lease without liability and said $10,000.00 payment shall be forfeited by Lessee.

(c)   Lessee, at Lessee's sole expense, shall have a current plat of survey of the Premises to be prepared by a duly licensed Georgia land surveyor.  The plat shall be made from the approximate boundaries on EXHIBIT "A" and show the location of all improvements, streets, highways, railroads, easements, and rights-of-way on the Premises, and shall set forth the total number of acres to the nearest hundredth of an acre.  Lessee shall furnish Lessor with a copy of said survey as soon as it is completed but within thirty (30) days following the effective date hereof and Lessee shall have (5) days to accept or reject the same.  If Lessor rejects said survey, Lessor has the right, at Lessor's sole expense, to have another duly licensed surveyor prepare a survey of the Property.  In the event there is a discrepancy between the two surveys, then the surveyors shall reconcile the discrepancy to the satisfaction of both the Lessor and the Lessee.  The legal description shall be taken from this survey and attached as Exhibit "A" and the survey shall be attached as Exhibit "B".  Lessee shall submit to Lessor, for Lessor's approval, a site plan of the Premises showing the

2

location of the proposed improvements and curb cuts on the Premises. Lessor shall have the right to modify the site plan in order to permit curb access from S.R. 60 into Lessor's adjacent property. Such approved site plan shall be initialed between the parties and attached as Exhibit "C".

(d)  At any time after the execution of this Lease by Lessor, Lessee may enter upon the premises to make topographical surveys, perform engineering studies, and to procure soil tests and borings to determine the premises' suitability for Lessee's proposed improvements. If such survey, studies, tests or borings indicate conditions not reasonable satisfactory to Lessee for such proposed improvements or Lessee's contemplated use, then Lessee, prior to the otherwise stated date for commencement may terminate this Agreement without further liability.

5.

RENT:

The Lessee covenants and agrees to pay to Lessor a rental in the amount specified in the Rental Rider attached hereto and made a part hereof, payable in equal ~~monthly~~ installments in advance on the first day of every calendar ~~month~~ during the original term and during any extensions thereof.

The first rental payment shall be due on the commencement date of this Lease as mentioned in Paragraph 3(a) of this Lease.

6.

BROKERAGE:
Broker has rendered Lessor and Lessee a valuable service by assisting in the creation of the Lessor-Lessee relationship hereunder. For this reason, Broker is made a party to this Lease and is given a special lien on the interest of the Lessor and the interest of the Lessee in the Premises in order to enable Broker to enforce its commission rights against the Premises as well as against the other parties hereto as herein provided and as otherwise provided by law or equity. The commission to be paid in conjunction with the creation of the aforesaid Lessor-Lessee relationship by this Lease has been negotiated between Lessor and Broker, and Lessor hereby agrees to pay Broker, as compensation for Broker's services in procuring this Lease and creating the aforesaid Lessor-Lessee relationship, as follows:

Lessor shall pay to Broker a commission equal to ten (10%) percent of the annual rental specified in the rental rider which shall be due on the commencement date and each anniversary thereof.

If the Lessee becomes a tenant at will or at sufferance or if the term of this Lease is extended or if this Lease is renewed or if a new lease is entered into between Lessor and Lessee covering

3

either the Premises, or any part thereof, or covering any other premises as an expansion of, addition to, or substitution for, the Premises, regardless of whether such premises are located adjacent to or in the vicinity of the Premises. Lessor, in consideration of Broker's having assisted in the creation of the Lessor-Lessee relationship, agrees to pay Broker Additional Commissions as set forth below, it being the intention of the parties that Broker shall continue to be compensated so long as the parties hereto, their successors and/or assigns continue the relationship of Lessor and Lessee which initially resulted from the efforts of Broker, whether relative to the Premises or any expansion thereof, or addition thereto or substitution therefor, or relative to any other premises leased by Lessor to Lessee from time to time, whether the rental therefore is paid under this Lease or otherwise shall be ten (10%) percent of the annual rental paid annually on each anniversary of the Commencement Date.

Nothing herein shall relieve Lessor from his obligation to pay Broker his commission if Lessee fails to pay any rental payment.

Broker agrees that, in the event Lessor sells the Premises, and upon Lessor's furnishing Broker with an agreement signed by Purchaser assuming Lessor's obligations to Broker under this Lease, Broker will release original Lessor from any further obligations to Broker hereunder. Voluntary cancellation of this Lease shall not nullify Broker's right to collect the commission due for the remaining term of this Lease and the provisions contained hereinabove relative to Additional Commissions shall survive any cancellation or termination of this Lease. In the event that the Premises are condemned, or sold under threat of and in lieu of condemnation, Broker shall, on the date of receipt by Lessor of the condemnation award or sale proceeds, be paid Broker's commission, reduced to its present cash value using a discount rate of six (6%) percent , which would otherwise be due to the end of the initial term or extended term, as the case may be.

METRO BROKERS, INC. has acted as agent for the Lessor in this transaction and is to be paid a commission by Lessor. METRO BROKERS, INC. has not acted as agent in this Lease for Lessee.

PURCHASE OF PROPERTY BY LESSEE: In the event that Lessee acquires title to the Premises or any part thereof, or any other premises as an expansion of, addition to, or substitution for, the Premises, at any time during the term of this Lease, any renewals thereof, or within six (6) months after the expiration of the term hereof or the extended term hereof, then Lessor may pay Broker a commission on the sale of the Premises in lieu of any further commissions which otherwise would have been due under this Lease. Such commission, shall be negotiated between the parties.

4

## TAXES:

Lessee shall return and pay before they become delinquent ad valorem taxes imposed during the term of this Lease upon or against all land, buildings, furniture, fixtures, equipment and improvements now or hereafter assessed either in the name of the Lessor, fee owner or Lessee. In no event shall the Lessee pay any taxes of Lessor based upon the rental or income of Lessor.

The taxes and other impositions payable by Lessee shall be paid not later than the date on which such taxes become delinquent and receipted tax bill shall be exhibited to the Lessor upon written request. In the event Lessee fails to pay said taxes and other impositions within the time provided, the Lessor may, after notice, pay same, in which event the Lessee shall remain liable to and obligated to repay Lessor the amount so advanced together with interest thereon at the rate of the prime rate as published in the Wall Street Journal on the day the taxes become late, plus eight per cent (8%). In the event any taxes or other impositions may be payable in installments, Lessee shall have the right to pay the same as such installments fall due.

The Lessee shall have the right, at its own cost and expense, to initiate and prosecute any proceedings permitted by law for the purpose of obtaining an abatement of or otherwise contesting the validity or amount of taxes assessed to or levied upon the premises and required to be paid against Lessor's estate and, if required by law, the Lessee may take such action in the name of the Lessor who shall cooperate with the Lessee to such extent as the Lessee may reasonably require, provided, however, that the Lessee shall fully indemnify and save Lessor harmless from all loss, cost, damage and expense incurred by or to be incurred by the Lessor as a result thereof, and further provided that Lessee shall, at Lessor's request, escrow or post a bond for the full amount of the tax claimed pending such proceedings. In the event the term of this Lease commences on a date other than the first day of the year or ends on a date other than the last day of the year the taxes shall be prorated on a daily basis between Lessor and Lessee.

8.

## INSURANCE:

(a)  From and after the commencement of this Lease, the Lessee shall at all times protect, indemnify, and save harmless the Lessor from and against any and all liability to third parties incurred by any act or neglect of the Lessee, or any of its agents, servants, or employees, in, on, or about the demised premises, and shall at all times at its own cost protect the Lessor with public liability insurance and property damage



insurance against claims for personal injury, death, or property damage occurring upon, in or about the premises. The insurance limit shall not be less than $500,000.00 for injury or death of a single person, $1,000,000 for any one occurrence and $100,000 for property damage. The Lessee shall deposit with the Lessor a certificate showing such insurance to be then in force.

(b) The proceeds from all fire, casualty, and extended insurance carried by Lessee shall be payable to Lessee or Lessee's assigns or mortgagee's; provided, however, Lessor shall have a lien on the proceeds of the insurance in the amount necessary to remove the destroyed improvements from the property in the event Lessee elects not to repair the damaged improvements.

9.

## LESSOR'S TITLE AND QUIET ENJOYMENT:

Lessor covenants and warrants that Lessor is seized in fee simple title to the premises, free, clear and unencumbered. Lessor covenants that so long as Lessee fulfills the conditions and covenants required of it to be performed, it will have peaceful and quiet possession thereof. Lessor further covenants and warrants that it has good right, full power and lawful authority to make this Lease for the full term and any extensions thereof.

10.

## IMPROVEMENTS AND ALTERATIONS:

During the term of this Lease Agreement, Lessee shall have the right to alter and renovate any improvements upon the demised premises and from time to time to construct a new building and land improvements and subsequent additions and alterations thereto as may be desirable, and all of such additions and improvements shall be and remain the property of the Lessee during the term of this Lease and any extensions thereof. Title to the improvements shall become vested in the then owner of the land at the expiration of the original term and any extensions thereof. In addition, Lessee has the obligation to keep the improvements and the land in good repair and in presentable condition so as not to diminish the income potential of the improvements and land. The obligation of Lessee to keep and maintain the Premises together with all improvements constructed thereon shall include, without limitation to, the obligation to:

  (a) Maintain all pavement on the Premises in a level, smooth and evenly-covered condition;
  (b) Remove all papers, debris, filth and refuse and thoroughly sweep the Premises to the extent reasonably necessary to keep the Premises in a clean and orderly condition;
  (c) Keep in repair any directional signs, markers and lines

6



hereafter located on the Premises;

(d) Keep in repair such artificial lighting facilities as may hereafter be installed or located on the Premises;

(e) Maintain all retaining walls, if any in a good condition and state of repair;

(f) Maintain all landscaped areas installed or located on the Premises in a clean and orderly condition;

(g) During any period in which the Premises is vacant, plant grass or other ground cover mowed and trimmed in a clean and sightly condition consistent to the character and quality of the adjoining property; and

(h) Maintain in good operating order all sewer, electricity, natural gas, water, telephone and other utility lines, pipes and conduits crossing the Premises and/or serving any improvements located thereon.

11.

RESTRICTIVE COVENANTS:

Without the prior written consent of the Lessor, no more than one (1) building may be constructed on the Premises with a freestanding car wash and no portion of any improvements on the Premises shall be greater than twenty-five (25) feet in height above the finished grade elevation of the Premises on which such improvement is constructed or contain more than one story and shall have an exterior building construction of brick, stucco or of the same type and appearance of Lessee's store at GA 400 and State Route 141 (exit 9).

Without the prior written consent of the Lessor, Lessee shall not construct or allow to be constructed any signs to be constructed or maintained on the Premises except signs relating to businesses conducted on the Premises.

Without the prior written consent of the Lessor, no improvements hereafter constructed on the Premises shall contain more than 2,700 gross square feet of floor space of which not more than 1,800 square feet used for store sales area.

12.

ENVIRONMENTAL CONTROL:

(a) Lessee shall install, maintain, monitor, inspect, inventory, remove and close all underground tanks, pumps hoses and associated appurtenances (hereafter "Tanks") located on the Leased Premises in strict compliance with all applicable federal, state and local laws, regulations, rules, directions and orders of federal, state and local governmental authorities.

(b) Definition: The term "Hazardous Substances", as used in this Lease shall mean and include any and all regulated substances, hazardous substances, toxic substances or hazardous

7

waste which, during the term of this Lease, are regulated by any local, state or federal law, rule or regulation pertaining to environmental regulation, pollution, contamination or cleanup, including, without limitation, "CERCLA"; "RCRA"; or state lien, state superlien, environmental cleanup statutes, or any state transfer and use restrictions (all such laws, rules and regulations being referred to collectively as "Environmental Laws"). Except for motor fuels, Lessee represents and agrees that it will not store, use or handle any Hazardous Substances on the Leased Premises other than in inconsequential quantities in the normal course of business. Lessee shall comply with all Environmental Laws affecting the Leased Premises during the Lease Term.

(c)  Environmental Baseline:  Prior to the Commencement Date, Lessee shall have conducted an environmental assessment and/or inspection of the Leased Premises which includes testing the soil and groundwater, among other things. The report shall be addressed to Lessor and Lessee.  Such assessment and inspection shall be conducted by _ATLANTA TESTING & ENGINEERING,_ _11420 JOHNS CREEK PKWY., DULUTH, GA 30136_ or such other firm approved by Lessor.  Such test results will be attached hereto as Exhibit "D", and establish the environmental baseline of the Leased Premises.  Such tests shall included but not be limited to: (i) scanning soil samples for total petroleum hydrocarbons (TPH) and benzene, toluene, ethylbenzene, and xylene (BTEX) and (iii) analyzing soil and/or water samples for other constituents recommended by the consultants.

(d)  Lessee Rights:  Lessee shall have the right to (i) install, maintain, repair and replace on the Premises the Tanks; (ii) use such Tanks during the term of this Lease for the storage and dispensing of motor fuel; and (iii) dispense motor fuels at the Premises for purchase by retail customers; provided, however, that all such activities, including, without limitation, maintenance, repair and removal of the Tanks shall be performed in accordance with all applicable Environmental Laws and other applicable governmental laws and regulations.

(e)  Notice:  In the event Lessee reports or gives notice or receives any notice or correspondence from any governmental entity pursuant to the Premises with respect to any local, state or federal law, rule or regulation regarding Environmental Law, copies of such report or notice shall be promptly delivered to Lessor.

(f)  Liability:  With respect to any Hazardous Substance which may at any time be present on the Leased Premises (except for those Hazardous Substances (1) in quantities below any governmental "action" level and (2) disclosed in the aforementioned environmental baseline) or any other property as a result of Lessee's use or occupancy of the Leased Premises,

8

Lessee shall, at its own cost and expense, take all actions as required by the applicable Environmental Laws for the cleanup of the Leased Premises or such other property, and shall further pay or cause to be paid at no expense to Lessor, all cleanup, administrative and enforcement costs, penalties, fines, liabilities, losses, liens, damages and other costs required or imposed by applicable governmental agencies, or a written settlement agreement or court orders from actions brought by third parties, which are asserted against the Leased Premises or such other property or against Lessor or the holder of any deed to secure debt encumbering the Leased Premises because of Lessee's act or omission during the Lease Term. Lessee hereby indemnifies Lessor and the holder of any deed to secure debt encumbering the Leased Premises and agrees to hold Lessor and the holder of any deed to secure debt encumbering the Leased Premises harmless from and against any and all actions, proceedings, damage, liability, loss, penalty, fine, lien, claim or expense ( including, without limitation, reasonable attorney's fees and court costs) which Lessor or the holder of any deed to secure debt encumbering the Leased Premises may suffer or incur as a result of any breach by Lessee of any representation contained in this Lease or as a result of a failure by Lessee to observe and perform its obligations under Lease, whether such breach or failure is intentional or negligent.

This indemnity includes but is not limited to the obligation of the Lessee to promptly perform any remedial activities required, ordered or recommended by any administrative agency, government official, or third party, or otherwise necessary to avoid injury or liability to any person or property, to prevent the spread of pollution, or permit continued safe operation of the Leased Premises (hereinafter called "Remedial Work"). To the extent that any Remedial Work requires the approval by any governmental authority of a remedial plan, the obligation of Lessee to remediate shall be delayed for so long as Lessee diligently and in good faith files and pursues the approval of such plan. Without waiving its indemnity, upon failure of the Lessee to perform remedial work with appropriate due diligence, Lessor may, at its option, commence such work itself, and require Lessee to pay all costs incurred.

(g)  Termination:  The termination of this Lease Agreement shall not terminate Lessee's obligations to Lessor and the holder of any deed to secure debt encumbering the Leased Premises under this Lease for acts, omissions, whether negligent or intentional, of Lessee as to Environmental Laws or other matters described in Paragraph 12(f) above in effect during the Lease Term.  Provided, however, Lessee's liability to Lessor shall be limited to matters proven to have arisen because of an act or omission of Lessee, whether negligent or intentional, during the Lease Term and only for matters affecting the Leased Premises or adjoining property caused by Lessee.  The burden of proof for such liability shall

9

be as required by law, provided, however, liability shall not arise merely because of Lessee was in possession of Leased Premises or because of the doctrine of "res ipsa loquitur."

(h) <u>Underground Storage Tanks:</u>  The Tanks installed by Lessee shall comply with all Environmental Laws, including but not limited to, all provisions of the Environmental Laws relating to:
    (i)      construction of the underground storage tank system;
    (ii)     registration;
    (iii)    corrosive protection;
    (iv)    release detection;
    (v)     spill and overflow protection;
    (vi)    record keeping and reporting; and
    (vii)   tank closure.

(i) <u>Georgia Underground Storage Tank Trust Fund (GUST trust Fund):</u>  Lessee represents and warrants to and covenants with Lessor that Lessee is currently participating in the GUST Trust Fund and that, Lessee will continue to participate in the GUST Trust Fund (or any successor fund thereto) during the initial term of this Lease and any extension thereof.  Lessee shall strictly comply with Georgia's Underground Storage Tank Management Rules establishing and maintaining eligibility for the GUST Trust Fund.  If Lessee is liable for any response costs that are recoverable under the GUST Trust Fund and for whatever reason fails to qualify for receipt of funds from the GUST Trust Fund to cover such response costs, Lessee shall be liable for all costs and expenses associated with preventive, corrective or enforcement actions necessary to protect human health or the environment, or for compensation of third-party liability claims.

13.

CREATION OF EASEMENTS:

Lessor, as owner of the Premises and the adjoining Tract of land, hereby reserves and grants unto himself, and his respective tenants, licenses, guest, legal representatives, successors and assigns, the following easements which shall run throughout the initial term of this Lease and any extensions thereof:

    1.    Access Easement;

    2.    Emergency Maintenance Easement;

    3.    Drainage Easement;

    4.    Utilities Easement; and

    5.    Encroachment Easement.



Lessee and Lessor understand and agree that the creation of the easements herein shall not be used or exercised in a manner as to unreasonably impede, obstruct, or interfere with the use and enjoyment of the Premises or to restrict in any way or manner the location of any buildings or improvements located or to be located on the Premises.

Access Easement shall refer to a non-exclusive easement, right and privilege appurtenant to and running with title to the adjoining tract(s), as the case may be, for the purpose of pedestrian and vehicular access ingress, egress and use over and across the driveway, parking and common areas of the Premises, as such areas may be located and relocated from time to time. This paragraph shall not imply or convey an easement to park on adjoining tracts. This easement shall be for the mutual benefit of Lessee and Lessor across adjoining tracts of Lessor.

Emergency Maintenance Easement shall refer to a non-exclusive easement over, across and under the Premises, in favor of the then owner(s) of the adjoining tract(s), as the case may be, and appurtenant to, and running with such party's title to its tract for the purpose of, and to be exercised only in the event that a condition exists on the Premises which in the reasonable discretion of the party entitled to exercise such Emergency Maintenance Easement, poses a threat or danger of property damage or personal injury on any portion of another adjoining tract. This easement shall be for the mutual benefit of Lessee and Lessor across adjoining tracts of Lessor.

Drainage Easement shall refer to a non-exclusive easement, right and privilege over, across and under the Premises, in favor of the then owner(s) of the adjoining tract(s), as the case may be, and appurtenant to and running with such party's title to its tract for the flow of surface water onto, over and under the Premises (or through drainage facilities constructed thereon in the future).

Utilities Easement shall refer to a non-exclusive easement right and privilege over, across, under and through the Premises, in favor of the then owner(s) of the adjoining tract(s), as the case may be, for the purpose of connecting or extending from utility services now or hereafter constructed on the Premises.

Encroachment Easement shall refer to a non-exclusive easement for encroachment of pavement or curbing over any common boundary line between the Premises and adjoining tract(s), as the case may be, which arise out of, or necessitated by, normal construction deviations and tolerances.

11

## LIENS:

Lessee covenants not to permit any lien to be filed against Lessor's interest on account of non-payment or dispute with respect to labor or materials furnished in connection with construction or any subsequent repairs, modifications or additions thereto, nor shall Lessee permit any judgment, lien (other than non-delinquent ad valorem taxes) or attachment representing a debt of Lessee to lie against Lessor's interest for any other reason. Should any lien of any nature be filed against the premises from the fault or alleged debt of Lessee, Lessee shall within thirty (30) days of such lien's perfection and actual notice thereof, cause such lien to be removed by substitution of collateral, bonding or otherwise.

In the event that Lessee, its Sublessees or assigns acquire personal property to be installed and used upon the premises subject to retention of title, conditional sale contract, chattel mortgage or other security agreement, the Lessor agrees to execute and deliver to any such secured creditor a waiver of any lien Lessor may have upon such personal property and right of secured creditor to remove. Such waiver and right of removal will be on a form provided by Lessee.

15.

## LEASEHOLD MORTGAGE:

In the event that Lessee shall pledge, convey or encumber its leasehold estate as security for an indebtedness in any form whatsoever (this pledge, conveyance or encumbrance hereinafter referred to as a "mortgage"), and if the holder of the indebtedness secured by the leasehold estate (hereinafter "mortgagee") notifies the Lessor of the execution of such mortgage, then and in such event, Lessor hereby agrees for the benefit of Lessee and such mortgagee from time to time:

(a) In the event of any default by Lessee hereunder, Lessor shall deliver to each mortgagee giving Lessor notice in the same notice given to Lessee, such mortgagee shall have the privilege of performing any of Lessee's covenants or of curing any defaults of Lessee or of exercising any election, option or privilege conferred upon Lessee by the terms of this Lease.

(b) The execution and delivery of a leasehold mortgage and a conditional assignment of this Lease as collateral security thereof shall not be deemed a Lease assignment for any other purpose.

16.

## DEFAULT:

Case 02-83138   Doc 109   Filed 10/18/02   Page 17 of 43

In the event that the Lessee shall fail to pay the rent when due or shall fail to perform any of its other obligations under this Lease (after notice of such default or breach shall have been given as hereinbelow provided and the time within which to cure the default has expired), the Lessor may elect either:

(a)  to re-enter the premises by summary proceedings or otherwise and re-let the premises, using its best effort thereof, and receiving the rent therefrom, applying the same first to the payment of rent accruing thereunder, the balance, after all expenses of reletting the premises have been deducted, if any, to be paid to the Lessee; but, the Lessee shall remain liable for the equivalent of the amount of all rent reserved herein less the receipts of re-letting, if any, and such amount shall be due and payable to the Lessor as damages or rent, as the case may be, on the successive rent days hereinabove provided, and the Lessor may recover such amount periodically on such successive days; or

(b)  to terminate this Lease and to resume possession of the premises wholly discharged from this Lease.

Such election shall be made by written notice to the Lessee and any mortgagee giving notice to Lessor as herein provided at any time on or before the doing of any act or the commencement of any proceedings to recover possession of the premises by reason of the default or breach the existing.  If the Lessor shall elect to terminate this Lease, all rights and obligations whatsoever of the Lessee and of its successors and assigns, so far as the same may relate to the unexpired portion of the term hereof shall cease, and within ten (10) days after receipt by the Lessee of notice of election by the Lessor to terminate this Lease, the parties shall, by an instrument in writing in form for recording, cancel this Lease and the unexpired portion of the term hereof and the Lessee shall surrender and deliver up to the Lessor the entire premises together with all improvements and additions, except trade fixtures and other personal property, and, upon any default by the Lessee in so doing, the Lessor shall have the right forthwith to re-enter the premises either by summary proceedings or otherwise.

If within forty-five (45) days after commencement of any proceedings by or against Lessee or its successor seeking any reorganization, arrangement, composition, liquidation, dissolution, in the event of insolvency of Lessee, such proceeding or state of insolvency shall not have been dismissed or removed, the Lessee shall be in default of this Lease.

No default or breach of covenant hereunder shall be deemed to have occurred on the part of the Lessee until thirty (30) days after written notice of such default or breach shall have been received by the Lessee and any mortgagee whom has given notice as

13



provided in Paragraph (11), and if applicable, the mortgagee within such time shall have failed to remedy such default or breach. If any default by the Lessee, except payment of the rent, cannot reasonably be cured within thirty (30) days after notice then the Lessee and the mortgagee shall have additional time as may be reasonably necessary.

Notwithstanding the fact that Lessee shall not be considered to be in default hereunder until the expiration of the Lessee's thirty (30) day notice and opportunity to cure period, rent which has not been paid within ten (10) days of its due date shall be considered late for the purposes of assessing a late charge only. Beginning with the eleventh (11th) day following the due date of the rent, a late charge of one per cent (1%) per day shall be assessed on all rent until it is paid. Should any rent due hereunder be collected by law or an attorney at law, Lessor shall be entitled to collect attorney's fees in an amount equal to fifteen (15%) of rent due plus late charges.

17.

CONDEMNATION:

    <u>Total-Permanent:</u> If at any time during the term of this Lease or any extension thereof, the entire premises or in the judgment of Lessee, such a substantial portion thereof as would render the balance of the premises not suitable for the use to which the premises was being utilized immediately prior thereto by the Lessee, shall be taken or appropriated by any competent authority for public or quasi-public use, this Lease shall terminate upon the date that possession is surrendered to the condemning authority, at which time all rights and obligations between the parties shall cease and rents and other charges apportioned. The taking of any portion of the building, fifteen percent (15%) or more of the then existing parking area not reasonably replaceable by the Lessor from contiguous land, or the loss of the rights of ingress and egress as then established unless comparable access can be made available, shall be but not exclusively considered such a substantial taking as would render the use of the premises not suitable for Lessee's use. Notwithstanding any provision of this Lease or by operation of law that leasehold improvements may be or shall become the property of the Lessor at the expiration of the full term hereof, the loss of all improvements paid for by the term hereof, the loss of all improvements paid for by the Lessee, the loss of Lessee's leasehold estate, and such additional relief as may be provided by law shall be the basis of Lessee's damages against the condemning authority if a separate claim therefor is allowable under applicable law, or basis of Lessee's damages to a portion of the total award if only one award is made.

    <u>Partial-Permanent:</u> In the event of a permanent partial taking or appropriation not resulting in a termination of this

14



Lease, the Lessee shall be entitled to a reduction of rent in such amount equal to the Base Rental applicable at the time of such condemnation multiplied by a fraction, the numerator of which is the useable acreage remaining after such condemnation and the denominator of which is the acreage of the premises prior to such condemnation.

Total-Temporary: If the taking of the whole of the premises or such portion thereof as would render the use of the property, in Lessee's sole opinion, not suitable for Lessee's use as set forth above shall be taken for a period of one (1) year or less, the term of this Lease shall be tolled and, all rent and other charges payable to Lessor shall abate from the time possession of the premises is surrendered to the taking authority and recommence when possession is restored to the Lessee. The basis for Lessee's damages against the condemning authority, if allowable, or against the total award shall be as suffered by Lessee for the interruption of Lessee's business and such additional relief as may be provided by law. If such taking shall extend beyond one (1) year, the taking shall, for the purposes of this Lease and at the option of Lessee, be considered permanent with the basis of Lessee's damages computed as a total permanent.

Partial-Temporary: If less than the whole of the premises or less than such portion thereof as would render the use of the premises not suitable for Lessee's purposes as aforesaid is taken, Lessee shall be entitled to a reduction of rental as is just and equitable, upon such date as possession is surrendered to the taking authority and continuing until possession is restored to the Lessee. In consideration of such reduction of rental, Lessee waives all rights to any portion of the award as may be payable to the Lessor.

General: Should the Lessor and Lessee be unable to agree as to the division of any singular award or the amount of any reduction of rents and other charges, such dispute shall be submitted for resolve to the court exercising jurisdiction of the condemnation proceedings, each party bearing its respective costs for such determination.

Lessor covenants that at the effective date hereof it has no actual or constructive knowledge of any proposed condemnation or any part of the premises. In the event that subsequent to the effective date of this Lease, but prior to the Commencement Date, a total or partial condemnation, either temporary or permanent, is proposed by any competent authority, Lessee shall be under no obligation to commence or continue construction and charges, if any, payable to the Lessor shall abate until such time as it can be reasonably ascertained that the premises shall not be so affected. Mortgagee of Lessee shall be entitled to Lessee's share of any condemnation award and, if assigned to mortgagee,

15



shall be payable to mortgagee.

18.

RIGHTS TO PURCHASE:

(a)  Lessee shall have the right during the term of this Lease to purchase the land on the same terms and conditions as those offered by Lessor to any party or parties, and Lessor shall immediately notify Lessee in writing of the identity of the party or parties making or receiving the same and the terms and conditions of such offer.  Lessee, within ten (10) days after receipt of such notice, may exercise this right by written notice to Lessor.  Any sale or transfer of the land, or any part thereof, shall be on the same terms as offered to Lessee and expressly made subject to all of the terms, covenants and conditions of this Lease.  Transfer or sale of the land to a family member of Lessor, entity composed of family members or a transfer upon death hereunder shall not be considered a sale, assignment or transfer for purpose of this Lease.  Lessee shall not have the first right to purchase the Premises if the offer to purchase the Premises is included or a part of an offer to purchase the adjoining land currently owned by the Lessor and Lessor shall have no obligation to notify Lessee of the identity of the party making such offer nor the terms and conditions of the such offer.

(b)  Lessor shall have the right during the term of this Lease to purchase the building, buildings or permanent improvements constructed on the land by Lessee on the same terms and conditions as those offered by Lessee to any party or parties, and Lessee shall immediately notify Lessor in writing of the identity of the party or parties making or receiving the same and the terms and conditions of such offer.  Lessor, within thirty (30) days after receipt of such notice, may exercise this right by written notice to Lessee.  Any sale or transfer of the building, buildings, or permanent improvements constructed on the land, or any part thereof, shall be on the same terms as offered to Lessor.  Transfer, exchange or sale of any interest in the building, buildings or permanent improvements constructed on the land or transfer or sale of any interest in Lessee or any of its successors-in-interest by merger, consolidation or liquidation shall not be considered a sale, assignment or transfer for the purposes of this Lease and shall not be subject to Lessor's right of first refusal.

19.

ASSIGNMENT OR TRANSFER BY LESSEE:

Lessee shall have the right to assign, sublet or transfer this Lease only with the Lessor's prior written consent, which consent shall not be unreasonably withheld or delayed.  Upon the assignment of the Lease by Lessee and the assumption by the

16

assignee, the obligation of the assignor shall be released as to
all obligations accruing subsequent to the assignment, provided
Lessor is left in the same position as with previous Lessee.
Lessor hereby consents to any assignment hereof by Lessee as
security to a lender providing financing for the development of
the premises or the construction of improvements thereon.

20.

**NOTICES:**

   All notices to the Lessee shall be sent by registered or
certified mail to the Lessee at P.O. Box 508, Dawsonville
Georgia 30534 , or at such
other address as the Lessee shall designate in writing.

   All notices to the Lessor shall be sent by registered or
certified mail to the Lessor at 3661 Tuxedo Rd Atlanta 30305
PO Box 20164 Atlanta, GA, 30325 or at such other
address as the Lessor shall designate in writing.
Notwithstanding any provisions in this Lease to the contrary
concerning modifications, a change in address may be effected by
a registered or certified letter sent by either party to the
other. All payments to the Lessor under the terms of this Lease
shall be made at the address designated for notices to the
Lessor.

21.

**MISCELLANEOUS:**

   Neither the Lessor nor the Lessee nor any of their agents
have made any statement, promises or agreements verbally or in
writing in conflict with terms of this Lease. Any and all
representations by either of the parties or their agents made
during negotiations prior to execution of this Lease and which
representations are not contained in the provisions hereof shall
not be binding upon either of the parties hereto. It is further
agreed that this Lease contains the entire agreement between the
parties, and no rights are to be conferred upon the Lessee until
this Lease has been executed by the Lessor.

   All terms and words used in this agreement, regardless of
the number and gender in which they are used, shall be deemed and
construed to include any other number, singular or plural, and
any other gender, masculine, feminine or neuter, as the context
or sense of this Lease or any paragraph or clause herein may
require, the same as if such words had been fully and properly
written in the number and gender.

   The Lease may be executed in any number of counterparts,
each of which when so executed and delivered shall be deemed an
original, but such counterparts together shall constitute but one
and the same instrument.

17

The Lessor and Lessee are not and shall not be considered joint ventures nor partners and neither shall have power to bind or obligate the other except as set forth herein.

Time is of the essence of this Lease.

In the event Lessee continues to occupy the premises after the last day of any extensions thereof, and the Lessor elects to accept rent thereafter, a tenancy from month to month only shall be created.

If any provision of this Lease or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term or provision to persons whose circumstances are other than those as to which it is held invalid or unenforceable, shall not be affected thereby.

No modification, alteration or amendment of this Lease shall be binding unless in writing and executed by the parties hereto, their heirs, successors or assigns.

The head notes to the sections of this Lease are inserted only as a matter of convenience and for reference, and in no way confine, limit or proscribe the scope or intent of any section of this Lease, nor in any way affect this Lease.

No failure of Lessor or Lessee to exercise any power given Lessor or Lessee hereunder, or to insist upon strict compliance by Lessor or Lessee with its obligations hereunder and no custom or practice of the parties at variance with the terms hereof shall constitute a waiver of Lessor's or Lessee's right to demand exact compliance with the terms hereof.

There shall be no merger in the event the fee interest and the leasehold interest are ever vested in one person or entity.

This Lease shall not be amended or modified without the consent of each mortgagee giving notice to Lessor as herein provided.

This Lease shall be governed by and construed according to the laws of the State of Georgia.

[SIGNATURES ON THE FOLLOWING PAGE]

18

Case 02-83138   Doc 109   Filed 10/18/02   Page 23 of 43



IN WITNESS WHEREOF, the Lessor has hereunto caused this Agreement to be executed and sealed this 15th day of December, 1992.

_Trish Etheridge_
Witness

_Chris Weaver_
Notary Public

Notary Public, Forsyth County, Georgia
My Commission Expires Feb. 21, 1993

_Carl R. Hartrampf, Sr._
Lessor: Carl R. Hartrampf, Sr.

_Trish Etheridge_
Witness

_Chris Weaver_
Notary Public

Notary Public, Forsyth County, Georgia
My Commission Expires Feb. 21, 1993

_Carl R. Hartrampf, Jr._
Lessor: Carl R. Hartrampf, Jr.

IN WITNESS WHEREOF, the Lessee has hereunto caused this Agreement to be executed and sealed this 7th day of December, 1992.

_Ellen S. Reus_
Witness

_Mary C. McMillan_
Notary Public

Notary Public, Dawson County, Georgia
My Commission Expires March 27, 1995

Lessee:     Country Cupboard
            Foodstores, Inc.

By: _Randall W. Wallace_

Its: _President_

ATTEST: _David Wallace_

Its: _Secretary_

[CORPORATE SEAL]

IN WITNESS WHEREOF, the Broker has hereunto caused this Agreement to be executed and sealed this 15th day of December, 1992.

_Trish Etheridge_
Witness

_Chris Weaver_
Notary Public

Notary Public, Forsyth County, Georgia
My Commission Expires Feb. 21, 1993

Broker: Metro Brokers, Inc.

By: _____

Its: _Associate Broker_

19

Case 02-83138   Doc 109   Filed 10/18/02   Page 24 of 43

# RENTAL RIDER TO GROUND LEASE

The Lessee covenants and agrees to pay to the Lessor rental in accordance with the following schedule, payable in equal quarterly installments in advance on the first day of each and every calendar quarter during the Original Term and during any extensions thereof:

(a)  During the first five (5) lease years of the Original Term, and including any period from the Commencement Date to the beginning of the first lease year (hereinafter referred to as the "First Rent Period"), Lessee shall pay to Lessor and annual rental of Twenty Five Thousand and no/100 Dollars ($25,000.00) (hereinafter referred to as the "Base Rental"), payable in equal quarterly installments due promptly in advance on the first day of each calendar quarter of the First Rent Period; provided, however that the Lessee shall pay the first eight (8) months in advance on the Commencement Date. `3|1|93 — z|z8|98`

(b)  During the sixth through the tenth lease years of the Original Term (hereinafter referred to as the "Second Rent Period"), Lessee shall pay to Lessor an annual rental equal to the sum of the Base Rental plus the product of the Base Rental times a percentage equal to the sum of the annual percentage increases, if any, for each lease year of the first five (5) lease years of the Original Term in the Consumer Price Index for All Urban Consumers, All Items Commodity Group, U.S. Cities Average (years 1982-1984 = 100), published by the Bureau of Labor Statistics of the United States Department of Labor (hereinafter referred to as the "Consumer Price Index").  Annual percentage increased in the Consumer Price Index shall be determined from the Consumer Price Index published on the date closest to the first day of each lease year to the Consumer Price Index published on the date closest to the last day of each lease year; provided, however, that the annual percentage increase for any one lease year shall not exceed five per cent (5%) and that the annual rental for the Second Rent Period shall not be less than the annual rental for the First Rental Period.  Said annual rent shall be payable in equal quarterly installments due promptly in advance on the first day of each calendar quarter of the Second Rent Period. `3|1|98 — z|z8|03`

(c)  During the eleventh through the fifteenth lease years of the Original Term (hereinafter referred to as the "Third Rent Period"), Lessee shall pay to Lessor an annual rental equal to the sum of the Base Rental plus the product of the Base Rental times a percentage equal to the sum of the annual percentage increases in the Consumer Price Index for each year of the first through tenth lease year of the term hereof, as determined from the Consumer Price Index published on the date which is closest to the last day of each lease year; provided, however, that the `3|1|03 — z|z8|08`

20



annual percentage increase for any one lease year shall not exceed five per cent (5%) and that the annual rental for the Third Rent Period shall not be less than the annual rental for the Second Rent Period.  Said annual rental shall be payable in equal quarterly installments due promptly in advance on the first day of each calendar quarter of the Third Rent Period.

(d)   During the sixteenth through the twentieth lease years of the Original Term (hereinafter referred to as the "Fourth Rent Period"), Lessee shall pay to Lessor an annual rental equal to the sum of the Base Rental plus the product of the Base Rental times a percentage equal to the sum of the annual percentage increases in the Consumer Price Index for each year of the first through fifteenth lease year of the term hereof, as determined from the Consumer Price Index published on the date which is closest to the last day of each lease year; provided, however, that the annual percentage increase for any one lease year shall not exceed five per cent (5%) and that the annual rental for the Fourth Rent Period shall not be less than the annual rental for the Third Rent Period.  Said annual rental shall be payable in equal quarterly installments due promptly in advance on the first day of each calendar quarter of the Fourth Rent Period.

<u>Extended Terms</u>

In the event that Lessee shall elect to exercise its ten (10) year option to extend this Lease, Lessee shall notify Lessor of its option to extend in writing (such notice shall only be for determining the Rental for the Extended Term and not Lessee's intent to exercise its renewal option) and shall in the notice designate a qualified person to act as its appraiser for the purpose of establishing a fair market value of the land (the Value).  Within ten (10) days after receipt of the written notice Lessor shall designate in writing a qualified person to act as its appraiser for the purpose of establishing the value of the land.  The two appraisers shall meet promptly to select a third appraiser for the purpose of establishing the value of the land. In all three cases the appraisers so designated shall be members of the American Institute of Real Estate Appraisers or such successor body hereafter constituted exercising similar functions.  Each appraiser shall within thirty (30) days, independently determine the residual value of the land taking only into consideration the current use of the improvements. Each appraiser must assume the then existing use as the highest and best use of the land and must use the land residual appraisal method to determine the value of the land.  Land residual technique is defined as follows:

A term designating a technique in which the building is valued independently of the land, and the fair annual net return on the building value (interest and provision for capital recapture) is deducted from the anticipated net

21



annual income to the property (land and building). The residual amount is said to be attributable to the land and is capitalized to indicate the land value.

At the end of the thirty (30) day period the three appraisers shall submit their appraisals to Lessor and Lessee. Lessor and Lessee hereby agree that the average of the three appraisals shall be the then fair market value of the land. It is agreed and understood that the annual rental for each consecutive Extended Term shall be ten percent (10%) of the fair market value of the land as determined by the procedure outlined in this paragraph, provided that the annual rental for each consecutive Extended Term shall not be less than the annual rental for the Fourth Rent Period of the Original Term or the previous Extended Term, as the case may be. Said annual rental shall be payable in equal quarterly installments due promptly in advance on the first day of each calendar quarter of the Extended Term.

Consumer Price Index:

If during the Original Term or any Extended Term of this Lease, said Consumer Price Index ceases to exist, the determination of the amounts of the adjustments in the annual rental hereunder shall be made with the use of such conversion factor, formula or table as may be published by Prentice Hall, Inc., or, failing such publication, by any other nationally recognized publisher of similar statistical information. If the Consumer Price Index shall cease to exist and no comparable publication exists for use in making the periodic adjustments herein provided for, the Lessee shall continue to pay the amount of the annual rental the in effect until Lessor and Lessee can agree upon a procedure for such adjustment. If Lessor and Lessee are unable to agree upon a procedure for such adjustment, this matter shall be submitted to arbitration and Lessee shall continue to pay the amount of the annual rental then in effect until a determination is reached, and an adjustment of such annual rent, retroactive to the date on which such Consumer Price Index rent adjustment should have been made, shall be made as soon as the procedure for such adjustment is determined by arbitration, or otherwise agreed upon between Lessor and Lessee.

Lessor: _____

Lessor: _____

Lessee: _____

22

EXHIBIT "A"

All that tract or parcel of land lying and being in Land Lot 149 of the 11th District of Lumpkin County, Georgia, (originally Hall County), and being more particularly described as follows:

Beginning at an iron pin, this iron pin being located south 43 degrees 22 minutes west, a distance of 188.4 feet to the center line of intersection of Long Branch Road and State Route 60; thence, along and with the northeasterly right-of-way of Long Branch Road, north 27 degrees 58 minutes 07 seconds east, a distance of 260.00 feet to an iron pin; thence, south 64 degrees 54 minutes 24 seconds east a distance of 153.52 feet to an iron pin; thence, south 09 degrees 17 minutes 34 seconds west, a distance of 170.00 feet to an iron pin located on the north right-of-way of State Route 60; thence, along and with the north right-of-way of State Route 60, south 80 degrees 57 minutes 10 seconds west, a distance of 200.00 feet to an iron pin; thence, north 46 degrees 03 minutes 48 seconds west, a distance of 50.00 feet to an iron pin, this iron pin being the point of beginning.

The above described property contains 1.00 acre as per plat entitled "Survey for Country Cupboard #48" by Farley-Collins Associates, Georgia Registered Surveyors, dated January 27, 1993. This plat is recorded in Plat Book 25, page 65, Lumpkin County Deed Records, and reference is made to the recorded plat for more particular description of this property.



# EXHIBIT "B"



# EXHIBIT "C"





RECORD NORTH

LONG BRANCH ROAD

Center Line

S 64° 54' 24" E

153.52"

260.00'

48.94'

170.00'

S 09° 17' 34" W

64.62'

NEW BUILDING

NEW CANOPY

30' RAD.

30' RAD.

35'

45.84'

N 27° 58' 07" E

N 46° 03' 48" W

50.00'

S 80° 57' 10" W

100'

Center Line

50' RAD.

200.00'

Conc. Curb & Gutter

STATE ROUTE # 60

# AMENDMENT TO LEASE No. 1

**THIS AMENDMENT TO LEASE** is dated, for identification purposes, December 18, 2000, by and between the Caroline Elizabeth Hartrampf Trust #1 and the Leigh Anne Chambers Hartrampf Trust #1 ("collectively Lessor") and Country Cupboard Food Stores, Inc. ("Lessee") and is made with reference to the following facts:

A. Lessor is the successor to Carl R. Hartrampf, Sr. and Carl R. Hartrampf, Jr. with respect to certain property located at 5585 South Chestatee Street, City of Dahlonega, County of Lumpkin, State of Georgia, pursuant to a written lease December 7, 1992 (the "Lease").

B. The Lease has been supplemented and amended, from time to time. As used herein, the "Lease" means the Lease, as amended and extended. The current lease term expires February 28, 2013.

**NOW, THEREFORE,** in consideration of the sum of ten dollars, receipt of which is hereby acknowledged, and for other good and valuable consideration, the parties hereto agree as follows:

1. Rental. Effective January 1, 2001, the rental for the "Second Rent Period" shall increase to $32,000 (thirty-two thousand dollars) per annum, payable in equal quarterly payments in advance on the first day of each calendar quarter. Said $32,000.00 shall be deemed the Base Rental for computing the CPI increases for the Third and Fourth Rent Periods as further described in the Rent Rider attached to the Lease.

2. Continuing Effect. Except as amended hereby, the Lease shall continue in full force and effect.

**"LESSOR"**

Attest: _Steve A. Galbraith_

**CAROLINE ELIZABETH HARTRAMPF TRUST #1**

By: _John A. Hartrampf Jr._
Its: _Trustee_

Attest: _Steve A. Galbraith_

**LEIGH ANNE CHAMBERS HARTRAMPF TRUST #1**

By: _John A. Hartrampf, Jr._
Its: _Trustee_

**"LESSEE"**

Attest: _____

**E-Z SERVE CONVENIENCE STORES, INC.**

By: _W. Clay Hamner_
Its: _CEO_

**STATE OF GEORGIA**

**COUNTY OF FULTON**

Cross Reference Memorandum
of lease Deed Book Y-11,
Page 133-157
                                        **ASSIGNMENT OF LEASE**

  THIS ASSIGNMENT OF LEASE (hereinafter referred to as this "Assignment") is made as of the **13**th day of **June, 2000** by and between **Carl R. Hartrampf, Jr., individually and Carl R. Hartrampf, Jr. and John Augustus Hartrampf, Sr., as the Executors of the Last Will and Testament and Codicil of the Estate of Carl Roerig Hartrampf, Sr., Deceased, the Hartrampf Family Limited Partnership I. L.P., a Georgia limited partnership and Hartrampf Family Partnership I, L.L.L.P. , a Georgia limited liablity limited partnership** (hereinafter referred to as "Assignor") and **John A. Hartrampf, Jr., Trustee of the Caroline Elizabeth Hartrampf Trust #1, u/a dated October 6, 1995, as to a 50% undivided interest and John A. Hartrampf, Jr., Trustee of the Leigh Anne Chambers Hartrampf Trust #1, u/a dated October 6, 1995, as to a 50% undivided interest** (hereinafter referred to as "Assignee").

## WITNESSETH:

  Whereas, Assignor is the Lessor under the terms of that certain Lease between Assignor and **Country Cupboard Foodstores, Inc**. (hereinafter referred to as "Lessee") dated **December 7, 1992** which relates to certain Lease located in Land Lot 149 of the 11th District of Lumpkin County known as **5585 South Chestatee Street, Dahlonega, Georgia** a copy of which is attached hereto as Exhibit "A" and a **Memorandum of Lease is recorded in Deed Book Y11 Pages 133 – 157 of the Lumpkin County records** (hereinafter referred to as the "Lease"). Following the execution of this assignment Assignee shall have a (100%) interest in the Lease; and

  Whereas, Assignor desires to assign all of its right, title and interest in and to the Lease to Assignee.

  NOW THEREOF, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby sells, assigns, transfers and conveys all of its right, title and interest in and to the Lease, and the income produced thereby, to Assignee.

  Assignor hereby warrants to Assignee that (i) assignor owns an undivided (100%) of the Lessor's interest under the Lease, (ii) as of the date hereof, all rental payments are current and Lessee is not otherwise in default under any of its obligations under the Lease, (iii) Lessor has not defaulted under any of its obligations under the terms of the Lease, and (iv) Exhibit "A" is a true, complete and accurate copy of the entire Lease and there are no modifications or amendments of said Lease which are not set forth on Exhibit "A".

1

Assignor hereby indemnifies Assignee from any claim, loss, cost or expense (including attorney's fees) which Assignee may suffer as the result of a breach by Assignor of its duties under the Lease, up to and including the date hereof.

Assignee, by its acceptance hereof, hereby agrees that it shall perform all of Lessor's duties under the terms of the Lease from and after the date hereof.

IN WITNESS WHEREOF, Assignor and Assignee have executed Assignment under the seal as of the date and year first above written.

As to Assignor Signed, sealed
and delivered in the presence
of:

_____
Witness

_____
Notary Public
My Commission Expires:
[NOTARIAL SEAL]

**Notary Public, Forsyth County, Georgia**
**My Commission Expires July 11, 2005**

_____
Carl R. Hartrampf, Jr., individually

_____
Carl R. Hartrampf, Jr., as Co-Executor of the Estate
of Carl R. Hartrampf, Sr.

_____
John A. Hartrampf, Sr. as Co-Executor of the Estate
of Carl R. Hartrampf, Sr.

**Hartrampf Family Partnership I, L.P.**

By: _____
Carl R. Hartrampf, Jr. as Trustee of the Carl R.
Hartrampf, Sr. Trust, General Partner

By: _____
John A. Hartrampf, Sr. as Trustee of the Carl R.
Hartrampf, Sr. Trust, General Partner

By: _____
Carl R. Hartrampf, Jr. as Co-Executor of the
Estate of Carl R. Hartrampf, Sr., General Partner

By: _____
John A. Hartrampf, Sr. as Co-Executor of the
Estate of Carl R. Hartrampf, Sr., General Partner

[signatures continued on the following page]

2

**Hartrampf Family Partnership I, L.L.L.P.**, a Georgia
limited liability limited partnership

**PCH Management, LLC**, its sole Managing
Partner

By: _____
    Carl R. Hartrampf, Jr., Managing Member

By: _____
    Patricia C. Hartrampf, Managing Member

Signed, sealed and delivered
in the presence of:

_____
Witness

_____
Notary Public
My Commission Expires:
[NOTARIAL SEAL]

Notary Public, Forsyth County, Georgia
My Commission Expires July 11, 2003

ASSIGNEE: Caroline Elizabeth Hartrampf Trust #1

By: _____
    John A. Hartrampf, Jr.

Its: _____Trustee_____

Signed, sealed and delivered
in the presence of:

_____
Witness

_____
Notary Public
My Commission Expires:
[NOTARIAL SEAL]

Notary Public, Forsyth County, Georgia
My Commission Expires July 11, 2003

ASSIGNEE: Leigh Anne Chambers Hartrampf Trust #1

By: _____
    John A. Hartrampf, Jr.

Its: _____Trustee_____

3

931144

000133

## MEMORANDUM OF GROUND LEASE AGREEMENT

THIS MEMORANDUM OF GROUND LEASE AGREEMENT, made this 7th day of **March**, 1993 by and between **Carl R. Hartrampf, Sr. & Carl R. Hartrampf, Jr.**, first party (hereinafter called "Lessor") and **Country Cupboard Foodstores, Inc.** second party (hereinafter called "Lessee") and Metro Brokers, Inc. third party (hereinafter called "Broker"). The terms "Lessor" , "Lessee" and "Broker" shall include their successors and assigns wherever the context so requires or permits.

GEORGIA, LUMPKIN COUNTY
CLERK'S OFFICE SUPERIOR COURT
Filed 2:55 P M. 03.22.93
Recorded in _Deed_ Book 411 Page 133-151
This 22 day of _March_, 19 93
_Edward E. Tucker_
EDWARD E. TUCKER, CLERK

### WITNESSETH:

1.

EFFECTIVE DATE:

This Lease became effective on the **7th** day of **December**, 1992, such date hereinafter being referred to as the "effective date".

2.

DESCRIPTION OF PROPERTY:

In consideration of the mutual covenants contained herein, Lessor hereby leases to the Lessee, and the Lessee hereby leases from the Lessor the following described property located in the County of Lumpkin and State of Georgia as follows:

Property described on the attached Exhibit "A" and depicted on Exhibit "B" together with all rights, easements, reservations, rights-of-way, improvements, advantages and appurtenances belonging or appertaining thereto, hereinafter the "premises".

3.

TERM:

(a)  Original:  The Lessee, its successors and assigns are to have and to hold the premises for an original term of Twenty (20) years.  The original term shall commence on **March 1, 1993** (hereinafter referred to as the "Commencement Date") and shall terminate Twenty (20) years later at Twelve o'clock (12:00) midnight.

(b)  Extensions:  Provided that the Lessee is not in default of its obligations under this Lease, Lessee shall have the option of extending the terms hereof for one additional period of Ten (10) years, commencing at midnight on the date on which the original term or any extended term of this Lease terminates.

The lease extension shall be automatic so that unless the Lessee shall give to the Lessor notice that it does not intend to renew this Lease, which notice must be given not later than one

1



After Recording, return to:
Hartrampf Outdoor, L.L.L.P
1684 Huntingdon Trail
Atlanta, Georgia 30350

Cross Reference:
Assignment: DB _____, PG _____
Lease Memorandum: DB Y-11, PG 133-157

## STATE OF GEORGIA

## COUNTY OF FULTON

### ASSIGNMENT OF LEASE

THIS ASSIGNMENT OF LEASE (hereinafter referred to as this "Assignment") is made as of the 1st day of **April, 2001** by and between **John A. Hartrampf, Jr., Trustee of the Caroline Elizabeth Hartrampf Trust #1, u/a dated October 6, 1995, as to a 50% undivided interest and John A. Hartrampf, Jr., Trustee of the Leigh Anne Chambers Hartrampf Trust #1, u/a dated October 6, 1995, as to a 50% undivided interest,** (hereinafter referred to as "Assignor") and **Hartrampf Outdoor, L.L.L.P., a Georgia limited liability limited partnership,** (hereinafter referred to as "Assignee").

### WITNESSETH:

Whereas, Assignor is the Lessor under the terms of that certain Lease assigned to Assignor by Lease Assignment dated **June 13, 2000** from **Carl R. Hartrampf, Jr, et al,** said lease is with **Country Cupboard Foodstores, Inc.** (hereinafter referred to as "Lessee") dated **December 7, 1992** which relates to certain Lease located in Land Lot 149 of the 11th District of Lumpkin County known as **5585 South Chestatee Street, Dahlonega, Georgia** a copy of which is attached hereto as Exhibit "A" and a **Memorandum of Lease is recorded in Deed Book Y-11, Pages 133-157 of the Lumpkin County records** (hereinafter referred to as the "Lease"). Following the execution of this assignment Assignee shall have a (100%) interest in the Lease; and

Whereas, Assignor desires to assign all of its right, title and interest in and to the Lease to Assignee.

NOW THEREOF, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby sells, assigns, transfers and conveys all of its right, title and interest in and to the Lease, and the income produced thereby, to Assignee.

Assignor hereby warrants to Assignee that (i) assignor owns an undivided (100%) of the Lessor's interest under the Lease, (ii) as of the date hereof, all rental payments are current and Lessee is not otherwise in default under any of its obligations under the Lease, (iii) Lessor has not defaulted under any of its obligations under the terms of the Lease, and (iv) Exhibit "A" is a true, complete and accurate copy of the entire Lease and there are no modifications or amendments of said Lease which are not set forth on Exhibit "A".

Assignor hereby indemnifies Assignee from any claim, loss, cost or expense (including attorney's fees) which Assignee may suffer as the result of a breach by Assignor of its duties under the Lease, up to and including the date hereof.

Assignee, by its acceptance hereof, hereby agrees that it shall perform all of Lessor's duties under the terms of the Lease from and after the date hereof.

IN WITNESS WHEREOF, Assignor and Assignee have executed Assignment under the seal as of the date and year first above written.

As to Assignor Signed, sealed
and delivered in the presence of:

_____

Witness

_Steve A. Galbreath_

Notary Public
My Commission Expires: JAN 24 2005
[NOTARIAL SEAL]

Caroline Elizabeth Hartrampf Trust No. 1

By: _____
John A. Hartrampf, Jr., Trustee

As to Assignee Signed, sealed
and delivered in the presence of:

_____

Witness

_Steve A. Galbreath_

Notary Public
My Commission Expires: JAN 24 2005
[NOTARIAL SEAL]

Leigh Anne Chambers Hartrampf Trust No. 1

By: _____
John A. Hartrampf, Jr., Trustee

Hartrampf Outdoor, L.L.L.P.
assignor as to 100% undivided interest

By: _____
John A. Hartrampf, Jr. as manager of JAHJR, LLC,
General Partner

After Recording, return to:
Hartrampf Outdoor, L.L.L.P
1684 Huntingdon Trail
Atlanta, Georgia 30350

Cross Reference:
Assignment: DB _____ , PG _____
Lease Memorandum: DB Y-11, PG 133-157

# STATE OF GEORGIA

# COUNTY OF FULTON

## ASSIGNMENT OF LEASE

THIS ASSIGNMENT OF LEASE (hereinafter referred to as this "Assignment") is made as of the **1st** day of **April, 2001** by and between **John A. Hartrampf, Jr., Trustee of the Caroline Elizabeth Hartrampf Trust #1, u/a dated October 6, 1995, as to a 50% undivided interest and John A. Hartrampf, Jr., Trustee of the Leigh Anne Chambers Hartrampf Trust #1, u/a dated October 6, 1995, as to a 50% undivided interest,** (hereinafter referred to as "Assignor") and **Hartrampf Outdoor, L.L.L.P., a Georgia limited liability limited partnership,** (hereinafter referred to as "Assignee").

## WITNESSETH:

Whereas, Assignor is the Lessor under the terms of that certain Lease assigned to Assignor by Lease Assignment dated **June 13, 2000** from **Carl R. Hartrampf, Jr, et al**, said lease is with **Country Cupboard Foodstores, Inc,** (hereinafter referred to as "Lessee") dated **December 7, 1992** which relates to certain Lease located in Land Lot 149 of the 11th District of Lumpkin County known as **5585 South Chestatee Street, Dahlonega, Georgia** a copy of which is attached hereto as Exhibit "A" and a **Memorandum of Lease is recorded in Deed Book Y-11, Pages 133-157 of the Lumpkin County records** (hereinafter referred to as the "Lease"). Following the execution of this assignment Assignee shall have a (100%) interest in the Lease; and

Whereas, Assignor desires to assign all of its right, title and interest in and to the Lease to Assignee.

NOW THEREOF, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, Assignor hereby sells, assigns, transfers and conveys all of its right, title and interest in and to the Lease, and the income produced thereby, to Assignee.

Assignor hereby warrants to Assignee that (i) assignor owns an undivided (100%)of the Lessor's interest under the Lease, (ii) as of the date hereof, all rental payments are current and Lessee is not otherwise in default under any of its obligations under the Lease, (iii) Lessor has not defaulted under any of its obligations under the terms of the Lease, and (iv) Exhibit "A" is a true, complete and accurate copy of the entire Lease and there are no modifications or amendments of said Lease which are not set forth on Exhibit "A".

Assignor hereby indemnifies Assignee from any claim, loss, cost or expense (including attorney's fees) which Assignee may suffer as the result of a breach by Assignor of its duties under the Lease, up to and including the date hereof.

Assignee, by its acceptance hereof, hereby agrees that it shall perform all of Lessor's duties under the terms of the Lease from and after the date hereof.

IN WITNESS WHEREOF, Assignor and Assignee have executed Assignment under the seal as of the date and year first above written.

As to Assignor Signed, sealed
and delivered in the presence of:

_____
Witness

Steve A. Galbreath
Notary Public
My Commission Expires: JAN 24 2005
[NOTARIAL SEAL]

Caroline Elizabeth Hartrampf Trust No. 1

By: _____
John A. Hartrampf, Jr., Trustee

As to Assignee Signed, sealed
and delivered in the presence of:

_____
Witness

Steve A. Galbreath
Notary Public
My Commission Expires: JAN 2005
[NOTARIAL SEAL]

Leigh Anne Chambers Hartrampf Trust No. 1

By: _____
John A. Hartrampf, Jr., Trustee

Hartrampf Outdoor, L.L.L.P.
assignor as to 100% undivided interest

By: _____
John A. Hartrampf, Jr. as manager of JAHJR, LLC,
General Partner

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

IN RE:                                  )
                                        )
E-Z SERVE CONVENIENCE                   )      Case No. 02-83134 C-11
STORES, INC., et al.,                   )        to Case No. 02-83138
                                        )
        Debtor.                         )
                                        )

CERTIFICATE OF SERVICE

I hereby certify that the foregoing MOTION OF HARTRAMPF OUTDOOR, LLLP TO
COMPEL DEBTOR TO COMPLY WITH 11 U.S.C. § 365(d)(3) AND FOR
ADMINISTRATIVE CLAIM was served upon the following parties by mailing a copy of the
same addressed as follows:

See Exhibit A.

This the 18th day of October, 2002.

_____
THOMAS W. WALDREP, JR.
N.C. State Bar No. 11135
Attorney for Hartrampf Outdoor, LLLP

6

E-Z Serve Convenience Stores, Inc.
1824 Hillandale Road
Durham, North Carolina 27705
(Mark King, CFO, fax 919-479-6023)

Robyn R. Whitman, Esquire (fax 336-333-5528)
Office of U. S. Bankruptcy Administrator
P. O. Box 1828
Greensboro, NC 27402

Christine L. Myatt, Esquire (fax 336-273-5357)
Attorney for GE Capital Corporation
Adams, Kleemeier, Hagan, Hannah & Fouts
P. O. Box 3463
Greensboro, NC 27402

CITGO Petroleum Corporation (fax 770-416-9005)
5255 Triangle Parkway      - -- -
Norcross, GA 30092

Motiva (Shell and Texaco) (fax 904-230-0651)
P.O. Box 600857
Jacksonville, FL 32260

Travelers Express Company Inc. (fax 952-591-3190)
1550 Utica Avenue South
Minneapolis, MN 55416

Kilpatrick Stockton (fax 404-541-3154)
Attorney for Betsy Camp
Suite 2800, 1100 Peachtree Street
Atlanta, GA 30309

Ann McGinley (512-239-2550)
Enforcement Division, MC 128
TNRCC Office of Compliance & Enforcement
P.O. Box 13087
Austin, TX 78711-3087

Chevron USA Inc. (fax 770-984-3004)
2300 Windy Ridge Parkway, Suite 800
Atlanta, GA 30339

Hussman (Convenience Works) (fax 813-620-0767)
2392 Collection Center Drive
Chicago, IL 60693

Paul R. Baynard, Esquire (fax 704-377-1897)
Rayburn, Cooper & Durham, P.A.
1200 The Carillion
227 W. Trade Street
Charlotte, North Carolina 28202

Kenneth M. Greene, Esquire, Attorney for CIT
Carruthers & Roth      (fax 336-273-7885)
P.O. Box 540
Greensboro, NC 27402

McLane Southeast Grocery Dist. (fax 706-357-9508)
P. O. Box 80208
Brookhaven, MS 39601

Georgia Lottery (fax 404-215-8817)
250 Williams Street
Inforum – Suite 3000
Atlanta, GA 30303

Florida Lottery (fax 850-487-7739)
Attn: Steve
Capital Complex
Tallahassee, FL 32399

Betsy Camp (fax 404-355-1958)
1035 West Wesley Road
Atlanta, GA 30327

Amber Refining/TNRCC (fax 512-320-0052)
Jane E. Atwood, Asst. Atty. General
P.O. Box 12548
Austin, TX 78711-2548

Transmontaigne Product Service (fax 303-626-8228)
P.O. Box 5660
Denver, CO 80217

Louisiana Lottery (fax 225-297-2279)
New Orleans, LA 70114

Hussman (Convenience Works) (fax 770-291-3018)
Attn: Jeff Burrows
2392 Collection Center Drive
Chicago, IL 60693

Williams Energy Marketing (fax 918-732-0278)
1 Williams Center
Tulsa, OK 74172

Kenan Transport Company (fax 919-967-2640)
143 W. Franklin Street
Chapel Hill, NC 27514

Frito Lay (fax 972-376-7237)
P.O. Box 643104
Pittsburgh, PA 15264-3104

Paysmart America (fax 954-928-0588)
1500 West Cypress Creek Rd., Suite 409
Ft. Lauderdale, FL 33309

Cobb Environmental & Technical (fax 662-841-0810)
P.O. Box 1602
Tupelo, MS 38802-1602

Placid Refining Company (fax 225-346-7447)
1940 Highway #1 North
Port Allen, LA 70767

S & Me Inc. (fax 770-919-2360)
3380 Town Point Drive, Suite 140
Kennesaw, GA 30144

Browns Dairy Products (fax 504-592-3619)
P.O. Box 52559
New Orleans, LA 70152

Louisiana Coca-Cola (fax 504-818-7339)
P.O. Box 54145
New Orleans, LA 70154

Florida Coca-Cola Btlg. Co. (fax 850-857-5611)
P.O. Box 102519
Atlanta, GA 30368-0519

Pepsi Cola
P.O. Box 75948
Chicago, IL 60675-5948

Flint Hills Resources (fax 316-828-7745)
(Koch Petroleum)
4550 North Point Parkway
Alpharetta, GA 30022

Colonial Oil Industries Inc. (fax 910-762-2359)
1002 South Front Street
Wilmington, NC 28401

Valero Marketing & Supply Co. (fax 210-444-8511)
P.O. Box 500
San Antonio, TX 79292

Jones, Day, Reavis & Pogue (fax 216-579-0212)
Attn: Neal Olack
North Point, 901 Lakeside Avenue
Cleveland, OH 44114-1190

Premcor Refining (314-854-1580)
(Clark Refining)
8182 Maryland Avenue
St. Louis, MO 63105

Coca-Cola – Atlanta (770-558-2535)
P.O. Box 102453
Atlanta, GA 30368

Delta Bev. Pepsi (fax 504-734-2806)
Pepsiamericas
75 Remittance Drive, Suite 18
Chicago, IL 60675-1884

Buffalo Rock – Panama City (fax 850-763-1318)
P.O. Box 35067
Panama City, FL 32412

Handex (fax 770-441-1926)
5555 Oakbrook Parkway
Suite 125
Norcross, GA 30093

Coca-Cola – Consolidated (fax 910-483-2072)
P.O. Box 751257
Charlotte, NC 28275-1356

Velda Farms, Inc. (fax 863-686-7792)
402 South Kentucky Avenue
Lakeland, FL 33801

South Carolina Education Lottery (fax 803-737-2005)
1201 Main Street, Suite 830
Columbia, SC 29201

First Health (fax 630-719-9701)
Bridget Bizon
Attn: Accounts Receivable Illinois
P.O. Box 30907
Salt Lake City, UT 84130

Crawford & Co. (fax 504-463-1116)
Attn: Loss Fund Accounting
100 Glenridge Point Suite
Atlanta, GA 30343

M O Jack Argence & Son (fax 504-737-9737)
140 Hickory Avenue
Harahan, LA 70123

Exxon Mobil Corporation (fax 703-846-1440)
3225 Gallows Road, 6D2111
Fairfax, VA 22037

Allen Beverages Inc. – Pepsi (fax 228-831-2719)
P.O. Box 2037
Gulfport, MS 39505-2037